IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICIA R.,[1]

                  Plaintiff,

       v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

                  Defendant.

Case No. 6:20-cv-00909-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Patricia R. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party and the non-governmental party's family members in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in March 1979, making her thirty-seven years old on January 10, 2017, her alleged disability onset date. (Tr. 15, 25, 118.) Plaintiff graduated from high school and has

past relevant work experience as a cashier checker, material handler, and claims, admissions, and returns clerk. (Tr. 25, 41, 247.) In her applications, Plaintiff alleged disability due to left hip osteoarthritis and related pain, depression, and anxiety and borderline personality disorders. (Tr. 88-89.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on July 27, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 15.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on February 7, 2019. (Tr. 38-70.) On April 15, 2019, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 15-27.) On April 6, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 3-8.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

///

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-27.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 10, 2017, her alleged onset date. (Tr. 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[L]umbar spine degenerative disc disease, left hip degenerative joint disease, obesity, status post surgery for urethral diverticulum, anxiety disorder, depression, and borderline personality disorder[.]" (Tr. 18.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.*) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to these limitations: (1) Plaintiff can occasionally push or pull with her left leg, climb ramps and stairs, stoop, kneel, crouch, and crawl, (2) Plaintiff can never climb ladders, ropes, and scaffolds, (3) Plaintiff must avoid exposure to workplace hazards, (4) Plaintiff can "understand, remember, and carry out simple routine repetitive tasks," and (5) Plaintiff can have "no more than occasional contact with the general public and coworkers." (Tr. 21.) At step four, the ALJ concluded that Plaintiff was not able to perform her past relevant work. (Tr. 25.) At step five, the ALJ determined that Plaintiff

PAGE 4 – OPINION AND ORDER

was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as an addresser, table worker, and "polisher, eyeglass frames." (Tr. 26.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide (1) clear and convincing reasons for discounting Plaintiff's symptom testimony; (2) legally sufficient reasons for discounting the opinion of Plaintiff's examining psychologist, Scott Alvord, Ph.D. ("Dr. Alvord"); and (3) germane reasons for discounting the lay witness testimony provided by Plaintiff's husband, Scott R. (Pl.'s Opening Br. at 3-11.) As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence in the record. Accordingly, the Court reverses the Commissioner's denial of benefits.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

## B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 22, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ failed to meet that standard here.

### 1.    Specificity Requirements

Plaintiff argues that the ALJ failed specifically to identify any symptom testimony that she found not credible and explain what evidence undermined that testimony, and therefore failed to satisfy the Ninth Circuit's requirements of specificity. (Pl.'s Opening Br. at 5.) Plaintiff notes that the Ninth Circuit recently addressed these requirements in *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020), and suggests that the ALJ's decision does not comply with *Lambert*. (*Id.* at 5-6.)

///

The Commissioner acknowledges that "[t]he Ninth Circuit has been critical of ALJ decisions that reject the claimant's testimony by simply reciting the medical evidence in support of the RFC finding." (Def.'s Br. at 6, citing *Lambert*, 980 F.3d at 1278). The Commissioner, however, argues that "the ALJ did not do that here" and instead "juxtaposed Plaintiff's allegations with various medical records and reported activities to show that she overstated her symptoms and limitations to the agency." (Def.'s Br. at 6.) As explained below, the Court disagrees.

### a.    *Lambert* and its Progeny

*Lambert* and its progeny are instructive as to the level of specificity that Ninth Circuit case law requires. In *Lambert*, the ALJ "noted generically that 'the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision.'" 980 F.3d at 1277. The ALJ also "provided four high-level reasons as to why [the claimant's] allegations were 'less than fully consistent with the evidence.'" *Id.* Specifically, the ALJ cited these four reasons:

> First, [the claimant] had 'not generally received the type of medical treatment one would expect for a totally disabled individual.' Second, the 'record reflect[ed] significant gaps in [the claimant's] history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms.' Third, [the claimant's] 'use of medications does not suggest the presence of impairments which is more limiting than found in this decision.' And finally, 'medications have been relatively effective in controlling [the claimant's] symptoms.'

*Id.* at 1270.

The Ninth Circuit determined that the ALJ's decision did "not meet the requirements set forth in our cases and d[id] not permit meaningful review." *Id.* at 1277. The Ninth Circuit held that the ALJ's generic introductory remark was insufficient, noting that "this boilerplate statement by way of introductory remark, which is routinely included in ALJ decisions denying

benefits, did not identify what parts of the claimant's testimony were not credible and why." *Id.* (simplified).

The Ninth Circuit also held that the ALJ's "four high-level reasons" were insufficient. *Id.* The Ninth Circuit explained that the ALJ's "relatively detailed overview" of the medical history was "not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Id.* at 1278 (citation omitted). The Ninth Circuit also explained that "our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, . . . [or] draft dissertations when denying benefits," but they "plainly required the ALJ to do more than was done here, which consisted of offering non-specific conclusions that [the claimant's] testimony was inconsistent with her medical treatment." *Id.* at 1277 (citations omitted). Further, the Ninth Circuit explained that it was "understandable" that the district court "attempted to fill in the ALJ's reasoning" and "shore up the ALJ's decision" by citing activities-related evidence and comparing it to "specific aspects of the medical evidence" (i.e., the general category under which the ALJ's reasons fit). *Id.*at 1278. The district court's efforts, however, were "unavailing" because "'[a]lthough the inconsistencies identified . . . could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make,' and '[the district court was] constrained to review the reasons the ALJ assert[ed].'" *Id.* (citation omitted).

Similarly, in *Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021), the Ninth Circuit explained that "[s]ummarizing [the claimant's] testimony about her limitations from her mental impairments, and later mentioning that her symptoms improved with medication and treatment, does not provide clear and convincing *reasons* to discredit that testimony." *Id.* (citing *Lambert,*

980 F.3d at 1277-78). The Ninth Circuit therefore held that the ALJ committed "reversible error." *Id.*

By contrast, in *Young v. Saul*, 845 F. App'x 518, 519 (9th Cir. 2021), the Ninth Circuit rejected the claimant's "argument that, by failing expressly to mention [the claimant's] assertion that his back pain created a need for him to take weeks off from work at a time, the ALJ thereby overlooked that testimony and failed to give reasons to discount it." *Id.* The Ninth Circuit explained that the "ALJ was not required to mention explicitly, in his ruling, each detail of [the claimant's] testimony, such as the need to take off weeks at a time from work." *Id.* at 520 (citing *Lambert*, 980 F.3d at 1277). The Ninth Circuit held that the ALJ did not err because he "specifically cited [the claimant's] written statements and testimony as among the items he had 'carefully consider[ed],' and he gave specific reasons why he did not credit [the claimant's] claims concerning the 'limiting effects' of [the claimant's] symptoms, including his 'back and knee pain.'" *Id.* at 519-20. Those reasons included inconsistent objective medical evidence, minimal treatment before the claimant's date last insured, which the ALJ found did not support the claimant's "subjective complaints," and a non-examining physician's conflicting opinion. *Id.* at 520.

### b.    Disposition

The Court finds that the ALJ's decision does not satisfy the Ninth Circuit's specificity requirements.

The ALJ noted generically that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 22.) But at no point in her decision did the ALJ specifically discount any of Plaintiff's symptom testimony. (*See* Tr. 15-27). Instead, after her generic introductory remark and before turning to

PAGE 9 – OPINION AND ORDER

the weight she assigned to "opinion evidence," the ALJ merely summarized the non-examining

state agency consultants' findings and evidence that did "not support significant changes since

the [medical consultants'] findings" and was "consistent with the assessments of [the

psychological consultants]." (Tr. 22-23.)

Thus, the ALJ's decision does not meet the Ninth Circuit's specificity requirements. *See*

*Reed v. Saul*, 834 F. App'x 326, 329 (9th Cir. 2020) ("The ALJ merely stated that Reed's

'statements concerning the intensity, persistence, and limiting effects of these symptoms are not

supported by the evidence to the extent they are inconsistent with the above residual functional

capacity assessment,' and then turned to a discussion of the medical evidence. The ALJ's

findings are therefore 'insufficient to meet our requirements of specificity.'" (quoting *Burrell v.*

*Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014))); *see also Burrell*, 775 F.3d at 1138 ("[T]he ALJ

stated only . . . that Claimant's self-reports were inconsistent in some unspecified way with her

testimony at the hearing. That finding is insufficient to meet our requirements of specificity.")

(simplified).

The Commissioner suggests that the ALJ complied with *Lambert*, but fails to cite any

passage where the ALJ specifically identified what part of Plaintiff's testimony was not credible

and explained why. (*See* Def.'s Br. at 6-10.) In fact, much of the Commissioner's response is

devoted to a near carbon-copy of the ALJ's summary of the state agency medical and

psychological consultants' findings and evidence related thereto. (*Compare id.* at 6-9, *and*

Tr. 22-23.)

After repeating the ALJ's summary of medical evidence and acknowledging that the ALJ

may not discount Plaintiff's testimony on the "sole ground" that it was "not fully corroborated by

objective medical evidence" (Def.'s Br. at 6-8) (simplified), the Commissioner attempts to fill in

the ALJ's reasoning by noting that the ALJ's summary referred to (1) Plaintiff not receiving mental health treatment for several years and failing to pursue counseling or medication management after reporting "suicidal thoughts," and (2) Plaintiff attempting to work after the onset date and being able to "driv[e] and [do] light housekeeping." (Def.'s Br. at 8-9.) Based on the foregoing, the Commissioner argues that "there is an abundance of evidence to support the ALJ's factual finding that Plaintiff overstated her subjective complaints," "a reasonable mind might accept the ALJ's analysis as adequate," and Plaintiff "merely asks the Court to re-evaluate the record and supplant the ALJ's factual findings." (*Id.* at 9-10.)

The Court finds the Commissioner's arguments unpersuasive for several reasons. First, circuit precedent makes clear that a federal court may not accept *post hoc* rationalizations for the ALJ's decision. *See, e.g.*, *Lambert*, 980 F.3d at 1278 ("[T]he credibility determination is exclusively the ALJ's to make, and we are constrained to review the reasons the ALJ asserts.") (simplified).

Second, the Commissioner fails to address noteworthy observations that the ALJ made. For example, the Commissioner cites a gap in Plaintiff's treatment and an example where Plaintiff failed to follow up after reporting suicidal thoughts, noting that an ALJ may discount a claimant's testimony based on "[c]onservative treatment." (Def.'s Br. at 8, citing, *inter alia*, Tr. 23.) Notably, however, in the cited portion of the decision, the ALJ observed that Plaintiff at one point "reported she had no health insurance." (Tr. 23, citing Tr. 577.) The Commissioner's argument also fails to address whether the record affords a compelling reason to view Plaintiff's treatment decisions as part of her underlying mental health impairments. Accordingly, and on this record, the Commissioner's argument lacks merit. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (noting that the Ninth Circuit has "held that an unexplained, or inadequately

explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a number of good reasons for not doing so applies," and holding that the claimant's "failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding") (simplified); *Malkin v. Saul*, 818 F. App'x 738, 740 (9th Cir. 2020) ("[W]e do not punish the mentally ill for their failure to seek treatment when the record affords compelling reason to view such departure as part of a claimant's underlying mental afflictions.") (simplified).

The Commissioner also fails to address noteworthy findings and record evidence about Plaintiff's work activity and reported activities. For example, the Commissioner suggests that the ALJ appropriately discounted Plaintiff's testimony based on her ability to drive, perform "light housekeeping," and "work on a part-time basis despite claims of disabling mental limitations." (Def.'s Br. at 9, citing Tr. 17.) The ALJ's decision and the record document two "unsuccessful work attempts" after the alleged onset date. (Tr. 17-18, 44-46, 49-50, 52-56.) The record reflects that the employers let Plaintiff go after less than six months of full-time work, Plaintiff reportedly experienced issues with, among other things, pain, anxiety, absenteeism, and stress intolerance, and Plaintiff was ten percent less productive than comparable coworkers at one job. (Tr. 17-18, 44-46, 49-50, 52-56, 235-37, 793-96; *see also* Tr. 18, 21, the ALJ made the conflicting observations that Plaintiff testified that she "quit both jobs" and "alleged she was ultimately fired from both jobs"). The record also reflects that Plaintiff does "[v]ery, very minimal" driving due to pain and Plaintiff's "mom has been doing everything pretty much," including all of Plaintiff's shopping and errands, "most" of Plaintiff's "household chores," and some driving. (Tr. 43-44, 57-58.)

///

Given this evidence, the Court concludes that the Commissioner's reliance on Plaintiff's unsuccessful work attempts after the alleged onset of disability and her reported activities is misplaced. *See Jordan v. Astrue*, 262 F. App'x 843, 845 (9th Cir. 2008) (holding that brief self-employment was not inconsistent with the claimant's testimony and noting that "brief, unsuccessful attempts to work are not inconsistent with disability" (citing *Lingenfelter*, 504 F.3d at 1038-39)); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the] claimed limitations").

### 2.    Conclusion

For these reasons, the Court finds that the ALJ committed harmful error in discounting Plaintiff's symptom testimony because the ALJ failed to provide at least one clear and convincing reason for doing so. *Cf. Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [it] as not credible"); *see also Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason" (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005))).

///

///

///

///

///

///

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law[3]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence [in the record].'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it

---

[3] The new regulations governing an ALJ's evaluation of medical opinion evidence do not apply here because Plaintiff filed her applications before March 27, 2017. *See generally Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (addressing the new regulations that apply to Social Security applications filed on or after March 27, 2017).

with boilerplate language that fails to offer a substantive basis for his conclusion." *Id*. at 1012-13

(citation omitted).

### B.    Analysis

#### 1.    Dr. Alvord's Opinion

Dr. Alvord evaluated Plaintiff and issued a report and medical source statement in

January 2019 regarding Plaintiff's ability to perform work-related activities. (Tr. 785-92.) In his

report, Dr. Alvord noted that he conducted a clinical interview and mental status examination,

but medical and psychiatric records were not "provided as an adjunct to [his] clinical interview."

(Tr. 785.) Dr. Alvord also noted that Plaintiff reported that she has been "involved in therapy 'for

Borderline Personality Disorder'" and "tried on a number of [selective serotonin reuptake

inhibitor] class antidepressants in the past," Plaintiff has not been prescribed any "newer mood

stabilization/antipsychotic class medications," and he believed that Plaintiff "meets the criteria"

for posttraumatic stress disorder ("PTSD") based in part on reports of unspecified childhood

trauma and a partner's "emotional and physical abuse." (Tr. 785-86.) Dr. Alvord added that

Plaintiff "primarily endorsed physical issues but did acknowledge a history of mood cycling,

suspiciousness, and low motivation," and Plaintiff reported that she was "discharged on Lithium"

after she was suicidal and "hospitaliz[ed] in an inpatient setting . . . for 3-4 days within the past

year," which Dr. Alvord stated "confirmed" that Plaintiff "suffers from Bipolar Disorder."

(Tr. 786.)

In addition to bipolar disorder and PTSD, Dr. Alvord's diagnoses included "a Somatic

Symptom Disorder predominantly involving pain," and "Borderline Personality Traits."

(Tr. 788.) Dr. Alvord stated that Plaintiff's prognosis was "guarded," and Plaintiff is in "need of

intensive psychiatric care" and "should be monitored closely for increasing suicidal ideation."

(*Id.*)

In his medical source statement, Dr. Alvord rated Plaintiff's ability to perform certain work-related activities. (Tr. 789-92.) Dr. Alvord opined that Plaintiff is markedly limited (i.e., a "serious limitation" in the area that results in "a substantial loss in the ability to effectively function") in her ability to interact appropriately with coworkers and "[r]espond appropriately to usual work situation[s] and to changes in [a] routine work setting," and moderately limited (i.e., "more than a slight limitation . . . but the individual is still able to function satisfactorily" in the area) in her ability to interact appropriately with the public and supervisors. (Tr. 789-90.) Dr. Alvord did not respond to the medical source statement's request to identify the factors that supported his assessment and wrote "NA" as to the date any limitations were "first present." (Tr. 791.)

### 2.     Disposition

Plaintiff argues that the ALJ failed to provide clear and convincing or specific and legitimate reasons for discounting Dr. Alvord's opinion. (Pl.'s Opening Br. at 8.) Plaintiff asserts that the ALJ erred in two ways: (1) by failing to address Dr. Alvord's opinion that Plaintiff is markedly limited in her ability to "respond appropriately to usual work situation[s]," and (2) by failing to provide sufficiently specific reasons for discounting Dr. Alvord's opinion. (*Id.* at 7-9; Pl.'s Reply at 8-10.) As explained below, the ALJ did not err in discounting Dr. Alvord's opinion.

The Court is not persuaded by Plaintiff's first argument. Plaintiff relies on the Court's decision in *Shelley V. v. Saul*, No. 6:18-cv-01760-SB, 2020 WL 1131489, at *7-8 (D. Or. Mar. 9, 2020), but correctly acknowledges that the "facts are not the same." (Pl.'s Opening Br. at 8.) In *Shelley V.*, the parties disputed whether the ALJ's RFC—which limited interactions with the public and workers but did not address supervisors—adequately accounted for a non-examining psychologist's opinion that the claimant was "moderately limited in her ability to accept

PAGE 16 – OPINION AND ORDER

instructions and respond appropriately to criticism from supervisors." 2020 WL 1131489, at *7. Recognizing that courts had found similar RFCs inadequate and noting that "[a]n ALJ errs when he fails to explain why he did not account for a portion of a physician's opinion in formulating the claimant's RFC," the Court concluded that the ALJ erred by failing to include a supervisory-related limitation in the claimant's RFC. *Id.* at *8. Notably, the Court also observed that although the ALJ did not assign full weight to the psychologist's opinion, the ALJ did not assign full weight because he concluded that the claimant was "more limited than determined by" the psychologist. *Id.* (citations omitted).

In contrast here, the ALJ did not find that Plaintiff was more limited than Dr. Alvord's opinion. (*See* Tr. 23-24.) In fact, the ALJ provided reasons for discounting Dr. Alvord's opinion and assigning greater weight to the non-examining state agency psychologists. (*See id.*) Accordingly, the Court finds unpersuasive Plaintiff's reliance on *Shelley V.*, and concludes that, standing alone, the ALJ's failure specifically to address Dr. Alvord's opinion that Plaintiff is markedly limited in her ability to respond appropriately to usual work situations did not amount to harmful error.

The ALJ's reasons for discounting Dr. Alvord's opinion were also legally sufficient. For example, in assigning only "some weight" to Dr. Alvord's opinion, the ALJ explained that she assigned greater but not full weight to the non-examining state agency psychologists' less restrictive opinions because "unlike Dr. Alvord, [they] had access to [Plaintiff's] medical records." (Tr. 23; *see also* Tr. 785, "Neither medical nor psychiatric records were provided as an adjunct to clinical interview."). This was a legally sufficient reason for discounting Dr. Alvord's opinion. *See, e.g.*, *Aldridge v. Berryhill*, 693 F. App'x 657, 658 (9th Cir. 2017) (holding that the ALJ did not err in assigning minimal weight to a treating physician's opinion and assigning

greater weight to a one-time consultative examiner and the non-examining state agency psychologists, and noting that the treating physician "did not consider or review . . . [the claimant's] medical records" and that "[u]nlike [the treating physician's] opinion, the opinions of the non-examining psychologists were based on a review of [the claimant's] . . . medical records").

In discounting Dr. Alvord's opinion, the ALJ also noted that "Dr. Alvord's understanding of [Plaintiff's] psychiatric history is incorrect, according to [Plaintiff's] own testimony." (Tr. 23; *see also* Tr. 48, 61-63, February 7, 2019, Plaintiff testified that she currently takes paroxetine, Wellbutrin, and cyclobenzaprine, the ALJ asked follow-up questions about Dr. Alvord's January 2019 examination, and Plaintiff testified that Dr. Alvord was "incorrect" in stating that she was "currently prescribed no medications" and "incorrect . . . on the time" of her reported inpatient hospitalization, which was "in the last three years" and "before [she] left Albany General"; Tr. 229-30, Plaintiff last received wages from Albany General in 2016; Tr. 785-86, Dr. Alvord stated that Plaintiff is "currently prescribed no medications," Plaintiff was "hospitalized in an inpatient setting at Corvallis Hospital for 3-4 days within the past year," and his observation that Plaintiff "presented as an individual who clearly suffers from Bipolar Disorder" was "confirmed by her hospitalization") (bold omitted). The Court concludes that the ALJ did not err in discounting Dr. Alvord's opinion on this ground. *See Grammar v. Berryhill*, 706 F. App'x 383, 384 (9th Cir. 2017) ("[T]he ALJ properly rejected Dr. Brown's opinion because Dr. Brown's diagnostic impression relied upon Grammer's inaccurate factual statements regarding his medical history.").

For all of these reasons, the Court finds that Plaintiff has failed to demonstrate that the ALJ committed harmful error in discounting Dr. Alvord's opinion. *See Jenkins v. Colvin*, No.

1:15-cv-01135, 2016 WL 4126707, at *10 (E.D. Cal. Aug. 2, 2016) (noting that "the party attacking the agency's determination bears the burden of proving any error was harmful") (citation omitted); *see also* Gilliland v. Saul, 821 F. App'x 798, 799 (9th Cir. 2020) (explaining that any errors are harmless if the ALJ "provided at least one valid reason" for not fully crediting evidence) (citation omitted).

## III.    LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by her husband, Scott R. (Pl.'s Opening Br. at 9-11.) The Court agrees.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (simplified). In this case, the ALJ discounted Scott R.'s testimony in part because "by virtual of his relationship" with Plaintiff, he "cannot be consider[ed] . . . to be a disinterested third party witness whose statements would not tend to be colored by affection for [Plaintiff] and a natural tendency to agree with the symptoms and limitations [Plaintiff] alleges." (Tr. 24.) This was not a germane reason for discounting Scott R.'s observations. *See Diedrich*, 874 F.3d at 640 (holding that a fiancé's "personal relationship with [the claimant was] not a valid reason to discount his observations," and noting that "to do so contradicts our insistence that, regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition") (simplified).

The Commissioner disagrees and relies on *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006), in arguing that ALJs may discount lay witness testimony based on a "close

relationship" with the claimant and a "possible 'desire to help.'" (Def.'s Br. at 11.) In *Greger*, the Ninth Circuit noted that in discounting a former girlfriend's lay witness testimony, the ALJ "considered [her] 'close relationship' with [the claimant], and that she was possibly 'influenced by her desire to help [him].'" 464 F.3d at 972. The Ninth Circuit, however, did not base its holding in *Greger* on this fact: "The ALJ's reasons for doubting [the claimant's] credibility are germane to [the former girlfriend]; accordingly, it was not error for the ALJ to disregard her testimony." *Id.* Thus, *Greger* does not stand for the proposition for which the Commissioner cites the case.

The ALJ also discounted Scott R.'s testimony because although "he is well positioned to offer longitudinal observations of [Plaintiff's] functioning," he "does not have the medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms or the frequency or intensity of unusual moods or mannerisms." (Tr. 24.) The Court finds that the ALJ's discounting of the testimony on this ground was improper. *See Agatucci v. Berryhill*, 721 F. App'x 614, 618 (9th Cir. 2017) (holding that the ALJ "improperly reject[ed] [the claimant's husband's] testimony because he lacks medical training and is not an impartial third party, both of which the [Ninth Circuit] has explained are not valid reasons for rejecting lay testimony" (citing *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009))); *Singleton v. Colvin*, 646 F. App'x 509, 511 (9th Cir. 2016) ("[T]he ALJ should reconsider the weight to be given the lay testimony regarding [the claimant's] limitations. The ALJ appeared to discount that testimony as 'incompetent' simply because the individuals had no medical training, but that of course will always be true of lay testimony.").

Additionally, the ALJ discounted Scott R.'s testimony because it was "overly restrictive in light of the medical evidence of record." (Tr. 24.) It is not clear to what medical evidence the

ALJ was referring because she did not provide any citations in support of this conclusion. (*See id.*) As Plaintiff pointed out and the Commissioner failed to address (*see* Pl.'s Opening Br. at 10; Def.'s Br. at 10-11), the Ninth Circuit has held that "[a] lack of support from medical records is not a germane reason to give 'little weight' to [a lay witness's] observations," and "[t]he fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich*, 874 F.3d at 640.

Finally, the Commissioner asserts that any error in discounting Scott R.'s testimony is harmless because the ALJ's clear and convincing reasons for discounting Plaintiff's testimony apply equally to Scott R. (Def.'s Br. at 11.) For the reasons explained above, this argument lack merit.

In summary, the ALJ failed to provide germane reasons for discounting Scott R.'s testimony.

## IV.   REMEDY

### A.   Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

**B.    Analysis**

The Court must remand this case for further proceedings because the credit-as-true standard is not satisfied here. Further proceedings would serve a useful purpose because conflicts remain in the record, the ALJ needs to reevaluate Plaintiff's testimony in accordance with *Lambert*, and it is not clear that the ALJ would be required to find Plaintiff disabled on the current record. *See Wade*, 850 F. App'x at 569-70 (explaining that "[t]he ALJ, who did not have the benefit of our most recent guidance [in *Lambert*], failed to articulate [any specific] reasons [for discounting the claimant's testimony and] the district court, whose decision predated *Lambert*, did not review the ALJ's decision under its requirements," the court "need not address" the claimant's other arguments "because the error as to [her] own testimony necessarily impacts the ALJ's treatment of other record evidence," and the credit-as-true criteria was not met because it was "not *certain* that the ALJ would be required to find [the claimant] legally disabled if the errors identified are corrected").[4]

///

///

---

[4] Plaintiff asserts that the ALJ "made additional independent errors." (Pl.'s Opening Br. at 11-12; Tr. 24.) Plaintiff may raise these additional issues on remand.

**CONCLUSION**

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and

REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 21st day of March, 2022.

_____

HON. STACIE F. BECKERMAN
United States Magistrate Judge